UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

NATIONAL SURETY CORPORATION                                             PLAINTIFF

v.                                                    CIVIL ACTION NO. 3:05-CV-119-S

HARTFORD CASUALTY INSURANCE COMPANY                                     DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on the parties' cross-motions for summary judgment (DNs 56 & 57). For the reasons set forth herein, the plaintiff's motion will be **DENIED** and the defendant's motion will be **GRANTED**.

## BACKGROUND

This case is an action for breach of contract and common-law bad faith by National Surety Corporation ("National") against Hartford Casualty Insurance Company ("Hartford"). Hartford was the primary liability insurance carrier for a company known as Sufix, while National provided Sufix with excess liability coverage. The limit of Hartford's policy was $1 million, while the limit of National's policy was $10 million.

In 1998, Tommy Cook was injured when a Sufix-made weed trimmer head broke apart while Cook was using it. In May 1999, Cook sued Sufix in Jefferson County, Kentucky, Circuit Court, and Hartford hired a defense attorney to litigate on Sufix's behalf. At one point, Cook offered to settle the case for $1 million – the limit of Hartford's policy. Hartford, however, declined to settle, and the case proceeded to trial.

On May 21, 2002, a jury found Sufix liable for Cook's injuries and awarded Cook more than $5.7 million in damages, including nearly $3 million in punitive damages. Because the award exceeded the limit of Hartford's policy, National was responsible for paying the portion of the claim that exceeded $1 million.

National has now sued Hartford,[1] arguing that Hartford breached its contract with Sufix and acted in bad faith because it did not notify National of Cook's claim until approximately three weeks before the case was scheduled for trial, because Hartford did not settle the case within its policy limits when given the opportunity to, and because Hartford allegedly did not conduct a sufficient investigation into Cook's claims. Both parties now move for summary judgment.

**ANALYSIS**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact arises when there is "sufficient evidence on which the jury could reasonably find for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1985). The evidence presented must be construed in the light most favorable to the non-moving party. *Blakeman v. Mead Containers*, 779 F.2d 1146, 1150 (6th Cir. 1985).

**I. National's Claim for Failure to Notify**

---

[1] In 2007, the Sixth Circuit Court of Appeals held that National, as an excess insurer, could "step into the shoes" of Sufix, its insured, and "sue a primary insurer [Hartford] pursuant to the doctrine of equitable subrogation to enforce the primary insurer's duty to avoid excessive judgments against an insured." *Nat'l Surety Corp. v. Hartford Casualty Ins. Co.*, 493 F.3d 752, 756 (6th Cir. 2007).

National's primary argument is that Hartford should be liable for the excess portion of the judgment against Sufix because Hartford did not notify National of Cook's claim until approximately three weeks before the Cook trial began. National claims that by the time it was informed of the existence of the Cook case, it had no choice but "to ride the horse that Hartford had saddled up." Pl.'s Resp. to Def.'s Mot. for Summ. J. (DN 59) at 6. Stated less colorfully, National argues that being informed of the Cook case at such a late date deprived it of the opportunity to play a meaningful role in the Cook litigation.

We do not believe National's "failure to notify" claim to be viable in the subrogation context. The Sixth Circuit Court of Appeals made clear in its 2007 opinion in this case that the only cause of action National may assert against Hartford is a cause of action that Sufix could have brought against Hartford. *See Nat'l Surety*, 493 F.3d at 760. In the prior *National Surety* decision, the Court of Appeals held that National could not assert a claim against Hartford for Hartford's purported failure to investigate whether Sufix had an excess liability carrier because "Sufix, who presumably knows from whom it has obtained insurance, would have had no such claim against Hartford. Instead, such a claim would presume a direct obligation of the primary insurer to the excess insurer, a concept rejected by most of those jurisdictions accepting subrogation of the primary insurer's obligation to its insured." *Id.*

We reach a similar conclusion with respect to National's claim against Hartford for any purported failure to notify National of Cook's lawsuit. National would only have a claim against Hartford for "failure to notify" if Sufix would. The evidence supports no such claim here. National does not allege that Sufix was unaware of the lawsuit or was not notified of the

lawsuit's existence in a timely fashion. That Hartford failed to send Sufix an "excess letter"[2] until March 2002 – approximately three months before trial – is of no moment. National's claim is based on the fact that it was unaware of the very existence of the lawsuit – not that it was unaware that the lawsuit might result in a judgment in excess of Hartford's policy limits. Sufix knew about the lawsuit, even if it was not explicitly informed of the likelihood of a verdict beyond Hartford's policy limits until three months before trial. Moreover, it was incumbent on Sufix, pursuant to the terms of its policy with National, to notify National of all claims against it. *See* DN 57-8 (Ex. 16 to Byrnes Depo.). Sufix apparently did not do so, but Sufix's failure to comply with its insurance contract with National should not and does not create liability for Hartford.[3]

National attempts to bolster its case by pointing out that Hartford's internal claims handling manual states that claim handlers should investigate the existence of other insurance coverage. However, National points to no authority for the proposition that Hartford's internal "best practices" procedures created a legal duty with respect to investigating the existence of Sufix's other insurance carriers or informing National of the Cook claim. Summary judgment for Hartford is appropriate on this aspect of National's claim.

**II. National's Bad Faith Claim Against National**

---

[2]This "excess letter" informed Sufix that Hartford believed it was "possible" a jury might award a verdict of more than $1 million.

[3]National asserts that because Sufix's owner is a Korean national "who needed a translator during proceedings in this case," Hartford should have been aware that the owner "was not a sophisticated insured, who knew that [sic] distinction between primary and excess insurance." Pl.'s Reply (DN 61) at 12. The court rejects this claim for two reasons. First, National cites no authority for the proposition that insurers of companies owned by non-English speakers owe a heightened duty to their insureds. Second, the implication that the owner of a multi-national company like Sufix – regardless of his native language – would be unable to comprehend basic insurance concepts strains credulity.

Summary judgment is also appropriate with respect to National's claims of bad faith against Hartford. "Liability for bad faith will arise only in those instances where an insurer acts with some degree of conscious wrongdoing, reckless or in a manner which reveals an unjustified gamble at the stake of the insured." *Matt v. Liberty Mut. Ins. Co.*, 798 F. Supp. 429, 434 (W.D. Ky. 1991); *see also Winburn v. Liberty Mut. Ins. Co.*, 8 F. Supp. 2d 644, 647 (E.D. Ky. 1998) ("[b]ad faith . . . is not simply bad judgment. It is not mere negligence. It imports a dishonest purpose of some moral obliquity. It implies conscious doing of wrong . . . . It partakes of the nature of fraud." (quoting *Matt*, 798 F. Supp. at 433)).

National spends a great deal of time in its briefs pointing out what it perceives as deficiencies in Hartford's handling of the Cook matter. It claims that Hartford failed to comply with its own internal policy manuals and deadline; that Hartford did not thoroughly investigate Cook's claim for the first two years it was in litigation; that Hartford failed to timely advise Sufix that there was a possibility that the plaintiff sought damages above the policy limits; that Hartford leaned too heavily on its defense counsel to investigate and handle the case; that Hartford failed to consider the possibility of punitive damages in the case; that Hartford made only "lowball" offers in its attempts to settle; that Hartford did not take into account a disparity between what its defense counsel believed its liability to be and what Hartford's internal estimates of its liability were; that Hartford misjudged the evidence in the case; and that Hartford knew Cook had suffered from "debilitating" injuries, but, in National's view, apparently did not handle the case accordingly. Nowhere in this litany of complaints, however, does National present any evidence that Hartford acted with "a dishonest purpose of some moral obliquity" or engaged in a "conscious doing of wrong."

Nor has National presented any evidence of recklessness on Hartford's part. Although National cites many aspects of the Cook case it wished Hartford had handled differently, and although National points out a number of apparent weaknesses in Hartford's investigation, it has not shown that Hartford acted in bad faith. As the Kentucky Court of Appeals has explained:

> The evidentiary threshold [for bad faith] is high indeed. Evidence must demonstrate that an insurer has engaged in outrageous conduct toward its insured. Furthermore, the conduct must be driven by evil motives or by an indifference to its insureds' rights. Absent such evidence of egregious behavior, the tort claim predicated on bad faith may not proceed to a jury. Evidence of mere negligence or failure to pay a claim in timely fashion will not suffice to support a claim for bad faith. Inadvertence, sloppiness, or tardiness will not suffice; instead, the element of malice or flagrant malfeasance must be shown.

*United Servs. Auto Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. App. 2003).

Even taken as true and construed in National's favor, the evidence National cites is, at best, evidence of "mere negligence . . . . [i]nadvertence, sloppiness, or tardiness."[4] Despite National's allegations of deficient performance on Hartford's part, Hartford nonetheless attempted settlement negotiations and mediation with Cook's counsel, evaluated the case in a not-unreasonable manner, and went on to defend Sufix at trial. That Hartford was unsuccessful in its negotiations, was wrong in its evaluation of Cook's claims, and ultimately failed to secure a victory for Sufix at trial does not mean that it is liable for bad faith. Accordingly, we will grant Hartford's motion for summary judgment with respect to National's bad faith claims and deny National's motion.

A separate order will issue in accordance with this opinion.

---

[4]In making this statement, the court makes no judgment as to the actual quality of Hartford's handling of the Cook claim other than to conclude that it was not done in bad faith.